UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MANISH KUMAR<br><br>Defendant | No. 21-cr-10157-MLW |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS [ECF 58]**

The United States respectfully submits this opposition to the defendant's motion to dismiss the indictment, which charges him with drug distribution, smuggling, and false statements. As a basis, the defendant alleges double jeopardy, vindictive prosecution, and unconstitutional delay in charging him with the offenses in the indictment. The Court should deny the motion because:

1. Double jeopardy does not apply where the indictment charges offenses different from the defendant's prior offenses of conviction;

2. There is no evidence of animus from prosecutors or of any circumstances creating a presumption of vindictiveness; and

3. There is no impermissible constitutional delay, where the defendant was charged after 15 months of investigation.

**I.    BACKGROUND**

The defendant's motion concerns his prosecution and conviction in Rhode Island in 2019 and 2020 and his subsequent indictment in Massachusetts in 2021.

The defendant first was arrested on August 27, 2019, after the filing of a criminal complaint in the District of Rhode Island based on the defendant's participation in a fraud scheme. *See United States v. Kumar*, No. 20-cr-00089 (D.R.I.), ECF 3 and 4. After arrest, on advice of counsel,

the defendant cooperated with the government in hopes of obtaining a more lenient sentence. Def.'s Mot. at 1 (ECF 58). The defendant met with law enforcement in Rhode Island, and when offered the opportunity to assist an investigation in Massachusetts, the defendant agreed. *Id*. Thereafter, the defendant met with federal agents in Boston and assisted the Boston-based investigation of computer technical support fraud and related money laundering. *Id*.

On February 27, 2020, the defendant, with his attorney, met with law enforcement and the undersigned government attorney in Boston to discuss information gathered by the government and to vet the defendant as a potential cooperating witness, particularly by exploring the scope of the defendant's criminal conduct and, with respect to the defendant's pharmaceutical business, whether criminal conduct was ongoing, while the defendant was in custody. The interview never got that far, however, because the defendant made false statements about his distribution of controlled substances to persons in the United States. *See* Indictment ¶¶ 19-20 (ECF No. 8).

After February 2020, the defendant stopped cooperating with the Massachusetts investigation. Separate and apart from proceedings in Rhode Island, and with no investigative involvement of the U.S. Attorney's Office in Rhode Island, federal law enforcement in the District of Massachusetts investigated the defendant's drug operation. In particular, the government sought to determine the scope of the drug operation, to identify the defendant's co-conspirators in his drug scheme, and to locate the defendant's drug-buying customers in the United States, including in Massachusetts. The investigation involved witness interviews, search warrants, and subpoenas, as well as forensic analysis of the defendant's devices and translation of communications in Hindi obtained from his devices into English.

In March 2020, the COVID 19 pandemic spread across the United States, and it delayed, slowed, and generally limited Court proceedings, commercial business, and law enforcement

activity nationally. For example, on March 12, 2020, the District Court issued General Order 20-1, restricting access to the courthouse. On March 13, 2020, the District Court issued General Order 20-3, continuing grand jury proceedings and allowing the United States Attorney to schedule grand jury time only for emergency or essential matters. Thereafter, the District Court issued a series of additional limitations on grand jury proceedings, including General Orders 20-14, 20-22, and 20-28, each of which continued grand jury proceedings and allowed the United States Attorney to schedule grand jury time only for emergency or essential matters. Law enforcement activities were also affected. For example, response times to grand jury subpoenas had to be extended, and interviewing witnesses became more difficult.

In the District of Rhode Island, on November 5, 2020, the defendant pleaded guilty, without a plea agreement, to an information that charged him with one count of conspiracy to commit wire fraud, four counts of wire fraud, and two counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1349, 1343, and 1028A, respectively. *See Kumar*, No. 20-cr-00089 (D.R.I.), ECF 14-17; *see also* Hr'g Tr., Nov. 5., 2020, at 19:15 to 27:19 (allocution and admission of facts), attached as Exhibit A. At the plea hearing, the defendant stated under oath that no one had promised him anything to convince him to waive indictment, Hr'g Tr. at 9:1-17, that no one had threatened him or forced him to plead guilty, and that no one had made any promises or assurances of any kind to get him to plead guilty, *id*. at 13:9-22. He admitted that he defrauded victims through a scheme involving fraudulent computer technical support and a separate scheme involving credit card fraud. The technical support fraud scheme that the defendant admitted involved internet pop-ups that deceived victims into believing that their computers had serious problems and directed the victims to contact "technical support." "Technical support" was actually a call center overseas, staffed by the defendant's coconspirators. Once connected, victims were deceived into paying for sham

services.  A second aspect of the technical support fraud scheme involved fake refunds:  the defendant's co-conspirators deceived victims into paying back an overpayment on a refund the victims had not really received.  In the credit card scheme, the defendant sold credit card information from customers of his Indian pharmaceutical business to other criminals, who fraudulently charged the victims' credit cards.

On February 11, 2021, the defendant was sentenced to 24 months of incarceration on the fraud-related convictions, which was an applicable mandatory minimum, and one year of supervised release.  *See Kumar*, No. 20-cr-00089 (D.R.I.), ECF 27.  Due to a clerical error, the judgement was entered incorrectly; the defendant informed the district court by letter; and the court corrected the sentence.  *See Id.* ECF 30 and 31 (correcting clerical error in initial judgment, which incorrectly specified a longer sentence).

On May 7, 2021, the defendant was released from Bureau of Prisons custody.

On May 12, 2021, federal law enforcement in Boston learned that he had been released. That same day, a criminal complaint issued in the District of Massachusetts, charging the defendant with conspiracy to distribute controlled substances, false statements, and conspiracy to smuggle misbranded drugs into the United States, in violation of 21 U.S.C. § 846 and 18 U.S.C. §§ 1001 and 545, respectively.

On May 17, 2021, a federal grand jury in Massachusetts indicted the defendant on charges of conspiracy, under 18 U.S.C. § 371, to smuggle illegal prescription drugs into the United States, in violation of 18 U.S.C. § 545 and 21 U.S.C. §§ 331(a) and (t) and 952(a) and (b); conspiracy, under 21 U.S.C. § 846, to distribute Schedule II and Schedule IV controlled substances, in violation of 21 U.S.C. § 841(a)(1); and with making a false statement, in violation of 18 U.S.C. § 1001(a)(2). As alleged in the Indictment, the charges are based upon the defendant's operation of a business

that sold misbranded, and thus illegal, prescription drugs, including controlled substances such as hydrocodone, tapentadol, and Adderall (all Schedule II) and tramadol and carisoprodol (both Schedule IV), to persons in the United States.

## II.     LEGAL STANDARDS

### A.     Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment bars more than one prosecution for the same offence, but "[s]eparate statutory offenses with different aims, each requiring proof of a fact not required by the other, are not the same offenses for the purposes of double jeopardy." *United States v. Bouthot*, 685 F. Supp. 286, 293 (D. Mass. 1988) (Wolf, D.J.) (quoting *U.S. v. Lopez Andino*, 831 F.2d 1164, 1167 (1st Cir. 1987))[1]; *see also United States v. Reyes-Correa*, 971 F.3d 6, 9 (1st Cir. 2020) (citing *Puerto Rico v. Sánchez Valle*, 136 S. Ct. 1863, 1867 (2016)) (same); *Gamble v. United States*, 139 S. Ct. 1960, 1980 (2019) ("[A]n 'offence' for double jeopardy purposes is defined by statutory elements, not by what might be described in a looser sense as a unit of criminal conduct." (citing *Blockburger v. United States*, 284 U. S. 299 (1932));

### B.     Vindictive Prosecution

Vindictive prosecution occurs when a prosecutor punishes a defendant for exercising constitutional or statutory rights. *Bouthot*, 685 F. Supp. at 302 (citing *United States v. Bassford*,

---

[1] The defendant's motion also refers to the so-called "Petite Policy," which is an internal Department of Justice guideline regarding successive prosecution of defendants that does not confer any substantive rights on defendants. *See Bouthot*, 685 F. Supp. at 296; *see also United States v. Peterson*, 233 F.3d 101, 104-05 (1st Cir. 2000) (citing *United States v. McCoy*, 977 F.2d 706, 712 (1st Cir. 1992)); *see also United States v. Meade*, 110 F.3d 190, 204 n.20 (1st Cir. 1997) (citing *United States v. Gary*, 74 F.3d 304, 313 (1st Cir. 1996)). The policy is also inapplicable to this case because the Massachusetts prosecution of the defendant is not based on substantially the same acts or transactions as the Rhode Island prosecution. *See* United States Department of Justice Manual, Section 9-2.031, available at 9-2.000 - Authority Of The U.S. Attorney In Criminal Division Matters/Prior Approvals | JM | Department of Justice.

812 F.2d 16, 20 (1st Cir. 1987)).  A defendant alleging prosecutorial vindictiveness either must show that the prosecutor acted from actual vindictiveness or animus against a defendant or that circumstances "reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness."  *United States v. Jenkins*, 537 F.3d 1, 3 (1st Cir. 2008) (citing *United States v. Marrapese*, 826 F.2d 145, 147 (1st Cir. 1987)); *see also Bouthot*, 685 F. Supp. at 302-03 ("[T]o succeed on [a] vindictive prosecution claim . . . [a] defendant[] must show that this federal prosecution is improperly motivated by a desire to punish the defendant[] for the exercise of [] constitutional or federal statutory rights." (citations omitted)).  "If a defendant raises a presumption of vindictiveness, the prosecutor may rebut the presumption by showing objective reasons for its charges."  *Jenkins*, 527 F.3d at 3.

To establish actual vindictiveness, a defendant must prove directly and objectively that the prosecutor's charging decision was a "direct and unjustifiable penalty" that resulted "solely from the defendant's exercise of a protected legal right."  *United States v. Goodwin*, 457 U.S. 368, 384, n.19, n.11 (1982).  For example, a defendant could show that a prosecutor actually said that he or she would bring a new charge specifically to punish the defendant for exercising his legal right. *See United States v. Campbell*, 410 F.3d 456, 462 (8th Cir. 2005).  This showing requires "direct evidence," not circumstantial evidence.  *United States v. Dwyer*, 287 F. Supp. 2d 82, 89 (D. Mass. 2003) (citing *United States v. Johnson*, 171 F.3d 139, 140 (2nd Cir. 1999)).  To prevail, the defendant must provide direct evidence that either "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) [the defendant] would not have been prosecuted except for that animus."  *Id*.

To establish a presumption of prosecutorial vindictiveness, the defendant must show that the circumstances of his case pose a "realistic likelihood" of vindictiveness that would be applicable in all cases with similar circumstances. *Blackledge v. Perry*, 417 U.S. 21, 27 (1974). To evaluate a defendant's claim, a court may "examine the prosecutor's stake in deterring the defendant's exercise of the constitutional right, and actions taken by the prosecution." *United States v. Lopez*, 854 F. Supp. 41, 45 (D.P.R. 1994) (citation omitted).

The presumption of vindictiveness is especially hard to establish in the pretrial context because the prosecutor has broad discretion to determine what crimes to prosecute. *See United States v. Bucci*, 582 F.3d 108, 112 (1st Cir. 2009) ("It is difficult to make such a showing pretrial, however, in light of the broad discretion afforded the prosecutor to determine who should be prosecuted and for what crime, and the presumption that the prosecutor has exercised that discretion in good faith."); *see also United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006) (The "presumption of vindictiveness does not apply to pretrial decisions by the prosecution"); *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001) ("[T]he presumption of vindictiveness . . . will rarely, if ever, be applied to prosecutors' pretrial decisions."); *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) ("A presumption of vindictiveness generally does not arise in a pretrial setting." (citation omitted)).

Notably, the Supreme Court has rejected the presumption of vindictiveness when, pretrial, a prosecutor threatens to charge a defendant unless the defendant pleads guilty and then carries out that threat when the defendant refuses to plead guilty. *See Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1977). Similarly, a prosecutor can threaten enhanced charges to induce a defendant's cooperation and carry out that threat if the defendant declines to cooperate. *See United States v. Kent*, 633 F.3d 920, 928 (9th Cir. 2011). Moreover, the Supreme Court has explained that it is

7

"unrealistic" to assume vindictiveness because a prosecutor brings new charges after a defendant files routine motions to dismiss, to suppress, to obtain discovery, or to "challenge the sufficiency and form of an indictment." *Goodwin*, 457 U.S. at 381. Indeed, the Court has discouraged expansion of the categories of cases in which a presumption of vindictiveness would apply. *See Wasman v. United States*, 468 U.S. 559, 566 (1984).

If a defendant successfully establishes a presumption of vindictiveness, the showing required to overcome it is "minimal—any objective evidence justifying the prosecutor's actions will suffice." *United States v. Safavian*, 649 F.3d 688, 694 (D.C. Cir. 2011).

### C. Unconstitutional Pre-Indictment Delay

The statute of limitations is the primary protection against delay in charging a defendant. *United States v. Ewell*, 383 U.S. 116, 122 (1966). To prevail on a claim that pre-indictment delay within the statute of limitations violated the Fifth Amendment's Due Process Clause, a defendant must show both that the "'delay caused substantial prejudice to his right to a fair trial' and that 'the [g]overnment intentionally delayed indictment . . . to gain a tactical advantage.'" *United States v. Bater*, 594 F.3d 51, 54 (1st Cir. 2010) (quoting *United States v. Picciandra*, 788 F.2d 39, 42 (1st Cir. 1986)); *Ruiz v. United States*, 221 F. Supp. 2d 66, 87 (D. Mass. 2002) (Wolf, D.J.) (same).

"With respect to prejudice, a defendant must do more than allege that witnesses' memories had faded or that evidence had been lost that might have been helpful to him.'" *United States v. Muñoz-Franco*, 487 F.3d 25, 58 (1st Cir. 2007). The defendant has a high burden. *Acha v. United States*, 910 F.2d 28, 32 (1st Cir. 1990) ("A defendant 'has a heavy burden to prove that a pre-indictment delay caused actual prejudice: the proof must be definite and not speculative;' 'bare allegations' will not suffice." (*quoting United States v. Valentine*, 783 F.2d 1413, 1416-17 (9th Cir. 1986)). For example, as the Seventh Circuit has explained, a defendant "must do more than

show that a particular witness is unavailable and that the witness'[s] testimony would have helped the defense. He must also show that the witness would have testified, withstood cross-examination, and that the jury would have found the witness credible." *United States v. Spears*, 159 F.3d 1081, 1085 (7th Cir. 1998) (citing *United States v. Doerr*, 886 F.2d 944, 964 (7th Cir. 1989)) and *Pharm v. Hatcher*, 984 F.2d 783, 787 (7th Cir. 1993).

With respect to intentional delay, only bad faith intentional delay counts. *United States v. Crooks*, 766 F.2d 7, 11 (1st Cir. 1985). The First Circuit has recognized that "pre-indictment delay for the purpose of investigation, for the purpose of discovering all the participants in a conspiracy so they could be tried together, and for the purpose of letting state authorities pursue their own prosecution is permissible. *United States v. Irizarry-Colón*, 848 F.3d 61, 70-71 (1st Cir. 2017) (citing *United States v. Lovasco*, 431 U.S. 783, 790-92 (1977) and *United States v. Marler*, 756 F.2d 206, 214-15 (1st Cir. 1985)).

### III.  ARGUMENT

#### A.  **The Indictment's Charges Are Different From The Offenses in Rhode Island**

The Double Jeopardy Clause does not bar the charges pending against the defendant in this case because they all require proof of statutory elements different from the elements of charges to which the defendant pleaded guilty in Rhode Island. *See Reyes-Correa*, 971 F.3d at 9. There, the defendant was convicted of wire fraud conspiracy, wire fraud, and aggravated identity theft, in violation of 18 U.S.C. §§ 1349, 1343, and 1028A. All related to his operation of a technical support scam or to the theft of credit card numbers. Here, he is charged with drug-related offenses—a Section 371 conspiracy to smuggle goods into the United States, in violation of 18 U.S.C. § 545; a Section 846 conspiracy to distribute Schedule II and Schedule IV controlled substances, in violation of 21 U.S.C. § 841(a)(1); and false statements about his drug business, in violation of 18 U.S.C. § 1001. These are all different crimes for the purposes of the Double Jeopardy Clause.

For example, the defendant's conviction for wire fraud conspiracy and for wire fraud in Rhode Island required proof, among other things, of a scheme to defraud. *See, e.g., United States v. DeNunzio*, 123 F. Supp. 3d 135, 142 (D. Mass. 2015) (citing *United States v. Appolon*, 715 F.3d 362, 367-368 (1st Cir. 2013)). None of the Massachusetts charges require that proof. Similarly, his conviction for aggravated identity theft required proof of a "means of identification." 18 U.S.C. § 1028(a)(1). None of the Massachusetts offenses have that element.

As to the current charges, to convict the defendant of conspiracy to smuggle goods into the United States, the government will have to prove an agreement, among other things, to import contraband into the United States, 18 U.S.C. § 545, and to prove that the import items were contraband. None of the Rhode Island charges have those elements. To convict the defendant of conspiracy to distribute controlled substances, the government will have to prove an agreement about *distributing* a controlled substance. *See United States v. Delgado-Marrero*, 744 F.3d 167, 190 (1st Cir. 2014). None of the Rhode Island charges required that proof. Finally, to convict the defendant of false statements, the government must prove, among other things, that the defendant made a false statement in a matter within the jurisdiction of the executive branch of the United States government. 18 U.S.C. § 1001(a)(2). None of the Rhode Island charges required that proof.

In sum, the offenses in Rhode Island and in Massachusetts are not the same, and the Double Jeopardy Clause does not apply to this case.[2]

### B.    **The Defendant Has Not Shown Vindictiveness**

The defendant's vindictive prosecution claim focuses mostly on the purported vindictiveness of the federal prosecutor in Rhode Island, carried out somehow through undersigned

---

[2] The defendant concedes this point, in part: "1st case they charge me for I misused their credit card [*i.e.*, fraud] second case they charge me I sent them prescription drugs without prescription [*i.e.*, drug distribution]." Def.'s Mot. at 2.

10

counsel. The defendant alleges both actual animus and circumstances that he says create a presumption of vindictiveness. As explained below, both claims must fail because the defendant points to no evidence supporting either of them.

The defendant presents no evidence that charging decisions in Massachusetts resulted in any way from actual animus toward him either by the prosecutor in Rhode Island or by undersigned counsel. The defendant has not shown and cannot show that the U.S. Attorney's Office in Massachusetts chose to indict the defendant at the behest of the U.S. Attorney's Office in Rhode Island. The Rhode Island prosecutor played no role and had no input in the charging decisions in the case before this Court. Moreover, the defendant does identify anything he has done in the case before this Court that resulted in any vindictive prosecutorial action by the undersigned counsel. The defendant has not exercised any legal rights in this case that resulted in any charging decisions by the U.S. Attorney's Office. The defendant only complains that he was charged after he refused a plea deal and refused to cooperate with the Massachusetts investigation. That is exactly what happened, and that is entirely permissible. *Bordenkircher* and its progeny explicitly allow a prosecutor to threaten a defendant with charges to induce a plea, and then, if the defendant refuses, to go ahead and charge the defendant as threatened. *Jenkins*, 537 F.3d at 3.

Separate and apart from the Massachusetts prosecution, the defendant points to no evidence that the prosecutor in Rhode Island acted vindictively at any time or in any manner. In fact, as the defendant must concede, the prosecution in Rhode Island did not bring any new charges or take any actions against the defendant after he refused to cooperate with the separate Massachusetts investigation. To the contrary, the Rhode Island prosecutor offered a *concession* by negotiating a plea deal that would have eliminated the aggravated identity theft charge from the Rhode Island

case. *See* Def.'s Ex. 1 (ECF No. 58-1) ("Having withdrawn the aggravated identity theft charge, it will be difficult to offer any additional concessions."). That is not vindictiveness.

The defendant's exhibits also disprove his claim that the Massachusetts charges resulted from the correction of his sentence in Rhode Island in 2021. The defendant's exhibits show that Massachusetts was moving toward charging the defendant by June 2020. Exhibit No. 1 contains an email in June 2020, in which the defendant's attorney told the Rhode Island prosecutor that he wanted the defendant to speak with the undersigned counsel about "the culpability he has for the MA investigation," and it contains an email in September 2020, in which the defendant's attorney told the Rhode Island prosecutor that he had spoken with the undersigned counsel about the charges that would be brought in Massachusetts. In other words, the Massachusetts investigation was working toward charging the defendant well before the defendant pleaded guilty in Rhode Island. The defendant's plea and sentence in Rhode Island did not affect the Massachusetts investigation or prejudice the government's current case against the defendant in any way.

In sum, the charges against the defendant in Massachusetts result from his active participation in a drug smuggling and distribution scheme and from his false statements to federal agents in Massachusetts about that scheme in February 2020. There have been no charging actions taken in this case other than those expressly recognized by the Supreme Court as permissible. *See Goodwin*, 457 U.S. at 380 and n.12 (explaining that *Bordenkircher* established that a prosecutor can carry out a threat to charge a person who refuses a plea deal). The defendant points to nothing suggesting otherwise.

    **C.**     **The Indictment Was Not Delayed By Bad Faith, And The Defendant Has Not Been Substantially Prejudiced**

The defendant's claim of unconstitutional delay also has no merit.

The government charged the defendant about 15 months after the defendant lied to law enforcement agents in Massachusetts on February 27, 2020. The false statements charge, and all other charges, came well within the applicable statute of limitations. In the 15 months between the defendant's false statements and May 2021, the government investigated the scope of the defendant's criminal conduct, sought to identify and to locate his co-conspirators, and interviewed persons who purchased controlled substances and other illegal prescription drugs from the defendant and his co-conspirators.[3] The First Circuit has held that delays in indicting for such reasons do not indicate bad faith. *See Irizarry-Colón*, 848 F.3d at 70-71. Moreover, the investigation took place during and was slowed by the outbreak of the COVID-19 pandemic and the resulting shutdown of many businesses. As noted above, the District Court also scaled back activity. Slowdowns in the investigation due to the pandemic, even if they contributed to delay, were unavoidable and beyond the government's control. The government did not intend to slow down its investigation. There was a national emergency.

The defendant also cannot show any substantial prejudice or improper purpose. There is no evidence, for example, that the government delayed indictment to deprive the defendant of witnesses or that the government sought to impose the burden of back-to-back trials. Nevertheless, the defendant claims two forms of prejudice resulting from delay: first, that he will not be able to call another target of the investigation as a witness, because the defendant briefly cooperated against that witness; and second, that he cannot now contact his business partners in India, have them come to the United States to testify, or obtain business records from them in India. None of

---

[3] The defendant is wrong that the government possessed all pertinent information in this case by the time he lied to investigators in February 2020. For example, in February 2021, the government obtained eleven email search warrants related to the investigation of the defendant and his associates.

this purported prejudice results from the 15 months between the defendant's false statements in Boston in February 2020 and his indictment in May 2021. Moreover, the defendant could never compel testimony from co-conspirators, because they have a right against self-incrimination. He cannot show that any of these witnesses could withstand cross-examination or that the jury would find them credible. And nothing now prevents the defendant from contacting his business partners for assistance or from obtaining admissible business records pursuant to Federal Rules of Evidence 803 (and 902(12)).[4] The prejudice that the defendant points to, such as it is, does not result in any way from the timing of the government's indictment in this case.

Finally, the defendant does not point to any tactical advantage that the government gained, or possibly could have gained, by intentionally delaying his indictment. No witnesses became unavailable, who would not otherwise have been unavailable. No evidence disappeared. In fact, the government gathered evidence, located witnesses, and identified co-conspirators. The government's actions in this case were taken in good faith and for good purpose. As the Supreme Court explained long ago,

> Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of 'orderly expedition' to that of 'mere speed[.]' This the Due Process Clause does not require. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.

*United States v. Lovasco*, 431 U.S. 783, 795-96 (1977) (citation omitted). Absent any actual prejudice, with delay caused only by investigation in the circumstances of the COVID-19

---

[4] The defendant has CJA stand-by counsel appointed to assist him.

pandemic, and absent any identifiable improper tactical advantage the government gained, the defendant's claim of unconstitutional delay must fail.

## IV. CONCLUSION

For the reasons stated above, the Court should deny the defendant's motions.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: /s/Kriss Basil
Kriss Basil
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants. A copy of this document has been provided to the defendant through stand-by counsel, by agreement.

/s/Kriss Basil
Kriss Basil
Assistant United States Attorney