UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 21-cr-10157-MLW |
| | ) | |
| MANISH KUMAR, | ) | |
| Defendant | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Manish Kumar faces sentencing in a second and successive prosecution by the United States government. This case, like the first, grows out of a business venture in India, supported by Indian call centers. The conduct in this case overlapped with the conduct which brought about the first case. Had Mr. Kumar been prosecuted and sentenced contemporaneously for both illegal pursuits, and sentenced within the guideline range, he would be close to finishing his sentence.

Although the government's allegations against Mr. Kumar are broad and complex, the charges to which he has pleaded guilty, and the conduct necessary to substantiate these charges, are straightforward. From 2015 to August 2019, Mr. Kumar was part-owner of a business that facilitated shipments of pharmaceuticals from his home country of India, and neighboring Singapore, to American consumers. The medications were commercially produced by legitimate foreign manufacturers. The illegality came from their importation to the United States, for two reasons: one, because the consumers did not provide proof that they had prescriptions for the medication and, two, because there are restrictions on the import of such medications by persons other than drug manufacturers. These shipments amounted to smuggling. Some of the medications were Schedule II and Schedule IV drugs, which Mr. Kumar and the other persons involved in the shipments were not authorized to distribute. During a proffer session with law enforcement in February 2020, Mr. Kumar lied about the extent of his involvement in the sale of controlled substances.

1

Mr. Kumar has accepted responsibility for this conduct and has pleaded guilty without the benefit of a plea agreement. He asks the court that he be sentenced to time served, a period of approximately 20 months. This sentence is sufficient, but not greater than necessary, to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## *Offense Conduct*

Mr. Kumar's business was designed to fill a gap in the marketplace of pharmaceutical drugs. He and others facilitated the shipment of prescription medications from India and Singapore to American consumers. The American customers benefited in two ways: they obtained prescription medication at low price points, and they were not required to provide a prescription.  These transactions were made outside the bounds of the regulations of medical insurers or government-sponsored health benefit systems.

A large percentage of these shipments were generic formulations of the erectile dysfunction medications Viagra and Cialis, which were available abroad but not in the United States due to patent protections for the drug manufacturers. Select generic versions of these drugs are now approved for sale in the United States.[1] Prior to the availability of generic formulations, these drugs were only available at a very high cost. They were not consistently covered by health insurance. Due to the nature of the medical condition involved, some men were likely embarrassed to consult with doctors to obtain a prescription. Others may not have had a primary care physician to contact. In recent years, American based companies have emerged to meet this demand, offering online consultations and pill

---

[1] See, e.g. Brennan, Zachary, *Teva Wins FDA Approval for First Viagra Generic, Will Not Launch Until 2017*, REGULATORY FOCUS, MAR. 10, 2016, https://www.raps.org/regulatory-focus%E2%84%A2/news-articles/2016/3/teva-wins-fda-approval-for-first-viagra-generic,-will-not-launch-until-2017

delivery outside of the traditional pharmacy model.[2] Even with the availability of generic medications, drug prices remain high.

Other medications were shipped following the same general model. These medications were purchased by individual consumers who, motivated by financial considerations, distrust or lack of access to legitimate prescribers, or the desire to obtain drugs for recreational use, chose to purchase them outside of proper legal channels. Sales data produced by the government shows that many of these purchasers were repeat customers, who were presumably satisfied with the products they received.

*Application of Sentencing Guidelines to Count 1*

Count 1 charges Mr. Kumar with conspiracy to violate 18 U.S.C. § 545, with reference to 21 U.S.C. § 331(a) (misbranded drugs) and 21 U.S.C. § 841(a)(1) (controlled substances). The manner in which this is charged creates a veritable nesting doll of sentencing guideline applications. Ultimately, the conspiracy defers to the substantive offense, which is smuggling; the smuggling offense then defers to the specific contraband items at issue, noting it is ill suited to importation of items banned for non-economic reasons. USSG §2X1.1, USSG §2T3.1, USSG §2T3 Intro. Commenta. To the extent that this offense involves controlled substances, the guidelines calculation would mirror the calculation for count 2, based on drug weight. The application of the guidelines to the other pharmaceuticals is more complicated.

Offenses involving misbranded drugs are assessed under USSG §2N2.1, which imposes a base offense level of 6. The government contends that the offense level is subject to further analysis under USSG §2B1.1, which applies to offenses involving fraud. Ultimately, however, Mr. Kumar is not charged with fraud, and is not charged directly under statutes pertaining to the sale of misbranded drugs; he is charged with (and has pleaded guilty to) conspiracy to import merchandise contrary

---

[2] See, e.g. "Roman" www.ro.co/roman; "GoodRx" www.goodrx.com/care/services/erectile-dysfunction; "hims" www.forhims.com

to law. 18 U.S.C. §545 criminalizes anyone who "fraudulently <u>or</u> knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation…" (emphasis added). The illegal importation of contraband is not inherently fraudulent, and Mr. Kumar is not alleged to have engaged in fraudulent conduct in furtherance of this offense. The offense level calculations and enhancements provided for in USSG §2B1.1 should not apply.

Even if this offense were properly assessed under USSG §2B1.1, the government's proposed loss figure is both excessive and at odds with its contention that there are no victims to the offense and no contemplated restitution amount. Applying the guidelines in this manner would cause Mr. Kumar to be sentenced identically for providing illegal but desired goods to customers as he would for stealing from them. His conduct differs from conduct in other cases where the Court found a loss to purchasers who received tainted or otherwise dangerous products. <u>Compare</u> <u>United States v. Gonzales-Alvarez</u>, 277 F.3d 73, 80 (1st. Cir. 2002) (wholesaler sold adulterated milk to stores and other suppliers for resale to unknowing end consumer); <u>United States v. Milstein</u>, 401 F.3d 53, 59-60 (2d. Cir. 2005) (medication contaminated with dirt and deliberately repackaged to appear like made in US, then sold to doctors, pharmacists, and pharmaceutical wholesalers to further conceal origin from end consumer); <u>United States v. Bhutani</u>, 266 F.3d 661, 670 (7th Cir. 2001) (drugs adulterated with additive to mask expiration date); <u>with</u> <u>United States v. Anderson</u>, 45 F.3d 217, 221 (7th Cir. 1995) (no loss where DIY veterinary medicine sold in "clearly homemade" packaging with hand-written labels and was popular with customers). In this case, Mr. Kumar's business shipped authentic foreign-produced pharmaceuticals to customers who made their purchases outside of legal channels and at a significant discount. This conduct was illegal, and he has accepted responsibility for this illegal conduct by pleading guilty, but it did not involve a financial loss properly captured by USSG §2B1.1.

4

*Uncertainty regarding sales value and drug quantity support a variance*

Even if the Court accepts the government's calculations for the purpose of preliminarily applying the sentencing guidelines, the uncertainty regarding both sales amounts and drug quantities supports a downward variance from the guidelines. The government's proposed tabulations regarding total sales and pill quantities are based on a hodgepodge of spreadsheets gathered from Mr. Kumar's laptop and email accounts. Some have price and credit card information but no information regarding shipment, while others have tracking-numbers and no information regarding sales.[3] Some spreadsheets referenced by the government have annotations regarding declined payments and refunds.[4] Some are undated.[5] These materials are insufficient to establish that all spreadsheets represent sales attributable to Mr. Kumar and the conspiracies to which he has pleaded guilty. No pharmaceuticals were seized. Limited financial documents have been produced. While there is ample documentation of sales of erectile dysfunction medication and certain Schedule IV drugs, the government's evidence of Schedule II drug sales is more sparse, with an outsized impact on the guidelines calculation.

Ultimately, the court retains the discretion and statutory authority to impose a fair sentence based on an individualized assessment, with the sentencing guidelines just one of several factors to consider. 18 U.S.C. § 3553(a). While the guidelines may provide "a rough approximation of sentences that might achieve §3553(a)'s objectives," they are not the final word. Kimbrough v. United States, 552 U.S. 85, 101 (2007).  Mr. Kumar's primary conduct was facilitating the shipment of erectile dysfunction drugs and Schedule IV painkillers to customers in the United States. This conduct, although serious, does not warrant the disproportionately high sentence suggested by the sentencing guidelines in this case.

---

[3] See, e.g., Gov. Sentencing Ex. 16 "Partial August 2016 ED drugs including MA" (no tracking); Gov. Sentencing Ex. 9.2 "TRAMA_&_SOMA_SHIPPING Attach" (no credit card or price information); Gov. Sentencing Ex. 2 "2015 SHIPMENT XLX" (tracking ID but no credit card, costs only in rupees)
[4] See, e.g. "MASTER_FILE_DINESH_GULIA.xls" (provided by government in discovery and in correspondence regarding sentencing calculations)
[5] See, e.g. "Shipping File.xlsx" (attached to Government's Response to Presentence Report).

## *Equitable Consideration of Mr. Kumar's Criminal Prosecution in Rhode Island*

Mr. Kumar first entered federal custody at the JFK International Airport on August 25, 2019. He was detained as a result of an arrest warrant stemming from an investigation into fraudulent call center activity being prosecuted out of the United States District Court, District of Rhode Island.[6] Federal investigators believed Mr. Kumar was part of an internet and call-center fraud scheme, and that he misused credit card information from Americans to whom he had sold pharmaceuticals. He was charged with conspiracy to commit wire fraud, wire fraud, and aggravated identity theft for tech support and credit card schemes.

During his interaction with the police on the day of his arrest and during ten additional meetings in the months that followed, Mr. Kumar disclosed that he and his business partners sold pharmaceuticals such as generic Viagra and Cialis through call centers. He also admitted to furnishing credit card information from pharmaceutical customers to a co-conspirator for use in a fraud scheme.  That same day he granted the investigators permission to access his mobile devices and laptop computer, signing a consent form. A short time later, he authorized the government to access his Apple ID and various email accounts. A common thread in these sessions was discussion of Mr. Kumar's involvement in illegal pharmaceutical sales. Mr. Kumar's cooperation with the government ended on February 27, 2020, the final proffer meeting, when he falsely denied involvement in the sales of controlled substances.

An Information in the Rhode Island case issued approximately eight months later, on October 21, 2020, alleging unlawful conduct by Mr. Kumar between March 2018 and August 2019. Despite the content of his conversations with law enforcement, and their access at the time to his computers, the Information did not include charges under statutes prohibiting the importation and sale of pharmaceuticals or controlled substances, or a charge for making false statements.

---

[6] 20-cr-00089-JJM-PAS.

On November 5, 2020, Mr. pleaded guilty. He was sentenced on February 11, 2021. (PSR 67). At sentencing, a substantial focus was placed on his role as a person selling pharmaceuticals, and the attendant sentencing enhancements that that position would warrant. (Transcript of Sentencing Hearing pp 4:12-9:24). The total offense level recommended by the Presentence Report for the remaining charges in the case was 14. United States v. Kumar 1:20-cr-00089-JJM-PAS Doc. 25.

The conduct in the instant case was interrelated with the conduct in the Rhode Island case, occurred contemporaneously with and prior to the conduct forming the basis of the Rhode Island charge, and was known to the government prior to the issuance of an Information there. If it had been charged together with the other Rhode Island charges, his sentencing exposure would be notably different. Although they would not group, the additional charges would result in a one level increase in his offense level (accepting for the purpose of argument Probation's estimate of an offense level of 22 and the recommended offense level of 14 prepared by Probation in Rhode Island). USSG §3D1.4. His criminal history category would be a I, as he had no contacts with the criminal court system prior to the Rhode Island case.

An equitable application of the sentencing guidelines would, therefore, account for the prison time Mr. Kumar has already served, which was charged separately at the discretion of the government. Using these numbers, Mr. Kumar would have faced a sentence of 46-57 months under the sentencing guidelines. Accounting for statutory good time, Mr. Kumar's completed Rhode Island sentence and subsequent detention to date on this case align with this guideline sentence. 18 U.S.C. §3624. A downward variance would account for the inflated sentencing exposure Mr. Kumar would face with a rote application of the sentencing guidelines.

### *Mr. Kumar's Personal Circumstances*

Mr. Kumar grew up in New Dehli, India. His family was poor, supported by his father's work as a carpenter. (PSR 76-77). He completed a high school education, but was not able to pursue higher study, due to a need to help support his family

financially. (PSR 23). He sought work in call centers, a large industry in India where he found opportunities for advancement. (PSR 93-97). Despite his circumstances, he was able to have some success in business. He did what he could to provide for his family, including medical and other needs for his brother who suffered an injury in a motorcycle accident and father who became unable to work due to complications from alcoholism. (PSR 80). He got married in 2018. (PSR 82). Since his arrest in 2019, his marriage dissolved and he has had limited contact friends and family, all of whom live outside the United States. (PSR 82). An additional period of incarceration will cause further isolation from the social network in India to which he will necessarily return.

Mr. Kumar has spent the last three and a half years in federal custody. Save for the false statements charge, the conduct in this case occurred prior to that time. Aside from a vacation in May 2019, his only exposure to the United States has been the inside of prisons and detention facilities. (PSR 75). The tourist visa on which he entered at the time of his arrest has long expired, and there is a warrant of removal against him. (PSR 75). He will almost certainly be deported to India upon his release from custody. Due to the nature of his convictions, he will likely be barred from ever returning to the United States. These are substantial collateral consequences to a conviction, beyond any formal sentence he receives.

**Avoiding Unwarranted Sentencing Disparities**

A downward variance from the Guidelines range for Mr. Kumar would not create a disparity among similar offenders. There are no charged codefendants in this case, and the quasi-related defendants (who face different charges than Mr. Kumar) have yet to be sentenced. While guideline sentences are one way of avoiding disparities, it is notable that in the District of Massachusetts, guideline sentences are not the norm; for fiscal year 2021, judges in the District of Massachusetts imposed guidelines sentences only 43.5% of the time, and imposed sentences with

non-government downward variances 37.3% of the time. U.S.S.C., Statistical Information Packet Fiscal Year 2021 District of Massachusetts, Table 8.[7]

Mr. Kumar's proposed sentence is also proportionate to sentences received by others. A New York woman named Lena Lasher received a three-year sentence for using her credentials as a licensed pharmacist to dispense substantial quantities prescription pain medication to customers without valid prescriptions through an internet pharmacy, altering labels on prescriptions, and repackaging and redistributing pills that had been returned.[8] A Florida man named Martin Paul Bean III was sentenced to two years in prison for a lengthy scheme that involved selling $7 million in unlawfully imported unapproved prescription oncology drugs to doctors, repackaging them to mask their origins, and using some of the proceeds to purchase a sports car.[9] In recent months, a Pennsylvania pharmacist Mitchell Spivack was sentenced to three and a half years in prison for conduct related to operating a neighborhood pharmacy that sold wholesale quantities of oxycodone to customers with obviously falsified prescriptions to the point that his business was the largest purchaser of oxycodone among retail pharmacies in the state, and defrauded Medicare and other insurers out of hundreds of thousands in dollars in fabricated prescriptions that were not filled.[10] While his proposed sentence is not identical to these others, it is proportionate in terms of Mr. Kumar's differentiating personal characteristics. He is not American, he is not a licensed doctor or physician who misused professional credentials and elevated status, and he did not engage in insurance or Medicaid fraud.

---

[7] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2021/ma21.pdf

[8] https://www.justice.gov/usao-sdny/pr/pharmacist-sentenced-three-years-prison-misbranding-and-fraud-offenses-arising-internet

[9] https://www.justice.gov/usao-sdca/pr/internet-pharmacy-operator-sentenced-two-years-prison

[10] https://www.justice.gov/usao-edpa/pr/owner-northeast-philadelphia-pharmacy-sentenced-3-years-conspiracy-distribute-oxycodone#:~:text=Romero%20announced%20that%20Mitchell%20Spivack,for%20conspiracy%20to%20distribute%20controlled

## CONCLUSION

A time-served sentence, taking into account Mr. Kumar's conduct, the sentence he has already completed, the interests of fairness and the immigration consequences he will face upon release, is just and proper.

Respectfully submitted,
Manish Kumar,
By his attorney,

Date: January 4, 2023

*/s/ Henry Fasoldt*
Henry Fasoldt, BBO # 667422
185 Devonshire Street, Ste. 302
Boston, MA 02110
henry@bostondefenselaw.com
617-338-0009 – office
617-784-3312 – cell

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on 1/4/23.

/s/ Henry Fasoldt