UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 21-cr-10157-MLW |
| | ) | |
| MANISH KUMAR, | ) | |
|        Defendant | ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

    Mr. Kumar submitted a sentencing memorandum requesting that the court impose a time-served sentence, reflecting approximately 20 months of incarceration. (Doc. No. 96) The government submitted a sentencing memorandum contending that, pursuant to its application of the sentencing guidelines, Mr. Kumar should be sentenced to 87 months incarceration (Doc. No. 95). The disparity is based largely on the Government's position that Mr. Kumar's conduct was fraudulent, and its unreliable estimate of sales it attributes to Mr. Kumar.

**ARGUMENT**

    1) *Lack of Fraud*

    The Government's contention that USSG §2B1.1 should apply to this offense is misplaced. While each of the various offenses incorporated by reference in count 1 of the charge against Mr. Kumar can involve fraud, each also includes non-fraudulent conduct. This distinction is reflected in the relevant sentencing guidelines. Offenses involving misbranded drugs are assessed under USSG §2N2.1, and only implicate USSG §2B1.1 if they involve fraud; the use of two separate sections makes clear that offenses involving misbranded drugs do not necessarily involve fraud.

    Mr. Kumar is charged with conspiracy to commit an offense against the United States in violation of 18 U.S.C. §371, which establishes criminal penalties for those who conspire "to commit any offense against the United States, or to

1

defraud the United States" (emphasis added). The specific conspiracy offense to which he pleaded guilty is importation of merchandise contrary to law in violation of 18 U.S.C. §545, which criminalizes whoever

> fraudulently <u>or</u> knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law. (emphasis added).

<u>Compare</u> <u>United States v. Dodd</u>, 43 F.3d 759 (1st Cir. 1994) (defendant prosecuted under second section of statute for knowingly (but not fraudulently) facilitating the transportation or concealment of illegally imported merchandise by hiding illegal weapons alongside other equipment being shipped back to United States from military base in Saudi Arabia). Not all activity prohibited by these statutes is fraudulent. <u>See, generally</u> <u>New England Duplicating Co. v. Mendes</u>, 190 F.2d 415, 417 (1st Cir. 1951) ("use of the disjunctive 'or' … leaves no doubt" that statute could be satisfied by either of two terms so separated); <u>United States v. Maravilla</u>, 907 F.2d 216, 225 (1st Cir. 1990) ("disjunctive 'or' strongly suggests" that words have distinct meanings and are not coextensive). The sale of misbranded drugs and controlled substances are likewise not inherently fraudulent.

The government's reference to <u>United States v. Orrego-Martinez</u>, 575 F.3d 1, 6 (1st Cir. 2009) to support its proposition that the fraud guidelines apply does not directly address the issue. In that case, the court considered the applicability of 21 U.S.C. §333, which applies enhanced penalties to misbranded drug and other §331 violations when they are committed "with the intent to defraud or mislead." In that case, the Court agreed there was adequate evidence for the enhancement, where the Defendant, who lied about being a doctor and about the contents of cosmetic injections he administered customers, also created false shipping papers and information sheets misrepresenting the nature of the materials after encountering difficulty getting through customs. <u>Orrego-Martinez</u>, 575 F.3d at 4. Although 21 U.S.C. §331 provides statutory framework for the conspiracy to unlawfully import charge, Mr. Kumar is not directly charged with violating that statute, and the

2

language of that enhancement statute, which includes deception as well as fraud, is not on all fours with the fraud-specific language of the sentencing guidelines. USSG §2N2.1.

    *2) Government's Loss Calculations and Drug Weight*

For the reasons discussed in Mr. Kumar's original sentencing memorandum, even if the fraud guidelines were to be applied, the court should not accept the government's loss calculations because they are based on incomplete and inconsistent spreadsheet documents.

The government's sentencing memo is nearly silent regarding the drug quantity it attributes to Mr. Kumar, resting instead upon its calculations regarding purported loss amount. Because there is no fraud, however, drug quantity likely becomes the controlling sentencing factor. The government's evidence of Mr. Kumar's involvement in the sale of Schedule IV drugs is significant; evidence of his involvement in the sale of Schedule II drugs is less so, and the government recognizes limitations in its ability to calculate these numbers with precision. Further complicating matters, the guidelines to not directly address calculation references for the Schedule II drug tapentadol. The sentencing guidelines provide a cap on drug weight for Schedule IV drugs (excluding Flunitrazepam, which is not at issue here) of 9.99 KG. USSG §2D1.1 Application Notes 8(D). This corresponds to a base offense level of 12. To the extent that the government maintains that Mr. Kumar was involved in the sale of Schedule II opiates, the guidelines demand a minimum base offense level of 12. Where a base offense level of 12 reasonably takes into account the maximum possible number of Schedule IV drugs to be calculated and does not run afoul of the minimum offense level for Schedule II opiates, this appears to be a fair base offense level to capture the controlled substance activity charged in Counts 1 and 2. If the Court imposes the enhancements and reductions proposed by probation, this would yield a total offense level of 16, which corresponds to a guideline range of 24-30 months of incarceration for a person with the criminal history attributed to Mr. Kumar, or 21-27 months for a person in criminal history

category I, as he would have been had this offense been charged contemporaneously with his Rhode Island matters.

## CONCLUSION

For these reasons, and the reasons discussed in his sentencing memorandum, Mr. Kumar asks the court to impose a time-served sentence.

Respectfully submitted,
Manish Kumar,
By his attorney,

Date: January 11, 2023

*/s/ Henry Fasoldt*
Henry Fasoldt, BBO # 667422
185 Devonshire Street, Ste. 302
Boston, MA 02110
henry@bostondefenselaw.com
617-338-0009 – office
617-784-3312 – cell

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on 1/11/23.

/s/ Henry Fasoldt