UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )    Civ. No. 1:24-12710-MLW |
| | )    Cr. No. 1:21-10157-MLW |
| MANISH KUMAR | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

WOLF, D.J.                                        August 28, 2025

In 2023, defendant Manish Kumar pled guilty to conspiring to smuggle misbranded drugs and controlled substances into the United States and to making false statements to federal authorities. He was sentenced to serve 87 months in prison. Judgment, Dkt. No. 102. Shortly after his sentence was affirmed on appeal, Kumar filed a pro se Motion to Vacate, Set Aside, or Correct Judgment or Sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion"). Dkt. No. 120; see also Kumar v. United States, No. 1:24-cv-12710, Dkt. No. 1. The government opposes Kumar's 2255 Motion. See Dkt. No. 122.[1] For the reasons stated in the government's opposition and amplified in this Memorandum and Order, the 2255 Motion is being denied.

---

[1] Kumar also filed a motion to compel the government to provide materials cited in its opposition, Dkt. No. 124, in response to which the government voluntarily mailed Kumar a binder containing the requested materials, Dkt. No. 125. As discussed further below, Kumar's motion to compel is being denied as moot.

I.    BACKGROUND

From at least March 2015 to August 2019, Kumar, an Indian national, participated in an operation selling adulterated or misbranded generic versions of prescription drugs, including Viagra and Cialis, and controlled substances, such as Adderall and the opioid Tramadol, to customers in the United States. See Aug. 12, 2024 Opinion of the U.S. Court of Appeals for the First Circuit in United States v. Kumar, No. 23-1087 (1st Cir. Aug. 24, 2024), docketed in this matter as Dkt. No. 117, at 2 ("Aug. 12, 2024 Opinion"). None of the pills involved were produced in a formulation approved by the Food and Drug Administration or sold with proper prescriptions. Id. Their importation and distribution, therefore, violated the Food, Drug, and Cosmetic Act, 21 U.S.C. § 331(a), and the Controlled Substances Act, 21 U.S.C. § 841(a)(1). Id. at 1-2.

Kumar was one of at least four partners in a New Delhi company, Mihu Business Solutions Pvt. Ltd., that was the parent company of several subsidiaries involved in the operation. Id. at 2. For his part, Kumar oversaw call centers in India that targeted customers in the United States. Id. at 3. Employing strategies directed by Kumar, the call center sales representatives made materially false statements to potential purchasers in the United States. Id. Kumar also played a role in the distribution of the

2

pills into the United States and in avoiding detection by United States authorities. Id. at 3-4.

A.  Kumar's Proffers and District of Rhode Island Prosecution

On August 25, 2019, Kumar was arrested at JFK Airport in New York on a criminal complaint filed in the District of Rhode Island alleging conspiracy, wire fraud, and aggravated identity theft. See United States v. Kumar, D.R.I. No. 20-cr-00089-JJM-PAS; see Aug. 12, 2024 Opinion, Dkt. No. 117, at 4. The Rhode Island charges involved Kumar's use of overseas call centers to commit "Tech Fraud" and "Refund Fraud" in 2019 using, at least in part, customer credit card information obtained in connection with the sale of generic drugs at issue in this case. See Pre-Sentence Report ("PSR") ¶¶9, 10, 67.[2]

Beginning on the day of his arrest and concluding on February 27, 2020, Kumar met with federal authorities, including in the District of Massachusetts, who were investigating money laundering activity by Kumar's business associates among other things. PSR ¶10, 40. During eleven proffer sessions, Kumar provided information and authorized federal investigators to access various personal electronic devices and his Apple ID and email accounts.

---

[2] According to the PSR, the Rhode Island case did not involve "the conduct at issue in this case." See PSR ¶¶9, 67 ("[T]he Rhode Island charges related to computer technical support fraud (pop-up messages that lead to account takeovers or credit card fraud) and credit card fraud. . ..").

Defendant's Sent'g Memo., Dkt. No. 96, at 6; PSR at pp. 42-43 & n.15; Jan. 18, 2023 Sent'g Hrg. Tr., Dkt. No. 111, at 42. The PSR indicated that these meetings took place without any cooperation agreement. However, Kumar's counsel objected to this language in the PSR indicating, instead, that the meetings were pursuant to a proffer agreement in letter form. Defendant's counsel indicated he provided this letter to the Probation Office in connection with this case, but the Probation Office indicated it did not receive the letter. Compare PSR at p. 4 n.2, with PSR at pp. 42-43. At the final meeting, Kumar falsely denied involvement in the sale of controlled substances. PSR ¶¶10, 40; Jan. 18, 2023 Sent'g Hrg. Tr., Dkt. No. 111, at 35; Aug. 12, 2024 Opinion, Dkt. No. 117, at 4 n.2. Kumar's false statements during this final meeting, which took place in Boston, are the basis for his false-statement conviction in this case.

Eight months later, in late October 2020, Kumar was charged by information in the District of Rhode Island. In early November 2020, Kumar pled guilty, without a plea agreement, to seven counts, including one count of conspiracy to commit wire fraud, four counts of wire fraud, and two counts of aggravated identity theft. See Nov. 5, 2020 R. 11 Hrg. Tr., D.R.I. Case 1:20-cr-00089-JJM-PAS, Dkt. No. 22, at 10-11.

On February 11, 2021, in Rhode Island, Kumar was sentenced Kumar to "time served" on the fraud counts to be followed by a

consecutive 24-month term on the aggravated identity theft counts. Feb. 12, 2021 Judgment, D.R.I. Case 1:20-cr-00089-JJM-PAS, Dkt. No. 27. Kumar thereafter requested that the court correct the judgment to effectuate the court's stated intent in sentencing him by adjusting the sentence to allow for the time Kumar spent in pretrial custody to count toward the 24-month term imposed for aggravated identity theft. Mar. 24, 2021 Letter, D.R.I. Case 1:20-cr-00089-JJM-PAS, Dkt. No. 30. On April 1, 2021, the court issued an Amended Judgment correcting, pursuant to Federal Rule of Criminal Procedure 36, a clerical error in the custodial sentence on the wire fraud counts to adjust the term from "time served" to 1 day in custody with the 24-month aggravated identity theft sentence to be consecutive, for a total custodial sentence of 24 months and 1 day. PSR ¶67; see also Mar. 31, 2021 Text Order, D.R.I. Case 1:20-cr-00089-JJM-PAS; see also PSR ¶11. On May 7, 2021, Kumar was released to an Immigration and Customs Enforcement ("ICE") detainer. PSR ¶67. On May 13, 2021, while in immigration custody, Kumar was arrested on the charges in this case. See Aug. 12, 2024 Opinion, Dkt. No. 117, at 4.

B.   Criminal Proceedings in this Case

The Indictment in this case charged Kumar with: (1) conspiracy to smuggle misbranded drugs and controlled substances into the United States in violation of 18 U.S.C. §§371, 545 and 21 U.S.C. §§331(a), 841(a)(1); (2) conspiracy to distribute controlled

substances in violation of 21 U.S.C. §846; and (3) making false statements in violation of 18 U.S.C. § 1001(a)(2). See Indictment, Dkt. No. 8; Aug. 12, 2024 Opinion, Dkt. No. 117, at 4.

On October 6, 2022, Kumar pled guilty to all three counts without a plea agreement. See Oct. 6, 2022 Rule 11 Hrg. Tr., Dkt. No. 91; Gov't Sentencing Memo., Dkt. 95, at 1.

The draft Presentence Report ("PSR") applied the fraud cross-reference from U.S.S.G. § 2N2.1, which directs the sentencing court to apply U.S.S.G. § 2B1.1(b)(1), and calculated the relevant loss amount for sentencing purposes as approximately $400,000.00. Aug. 12, 2024 Opinion, Dkt. No. 117, at 5. The final PSR, however, relied on the government's subsequent submissions, and calculated the loss as $3,500,000. Id. at 4-5. This resulted in an increase in the advisory Guideline range from 46-57 months in the draft PSR to 87-108 months in the final PSR. Id. at 5.

Pursuant to U.S.S.G. § 4A1.1(a), the PSR included three criminal history points for Kumar's Rhode Island conviction, which placed him in Criminal History Category II. PSR ¶¶67-69. Kumar did not object.

At sentencing, the parties disputed the Guidelines calculations, including the relevant Guideline provisions and the applicable loss amount, and sought different sentences. Concerning the Guidelines calculations, Kumar argued, through counsel, that applying the cross-reference to U.S.S.G. § 2B1.1(b)(1) was

improper, id. at 3-4, and, in any event, that the government's proposed loss figure was "excessive and at odds with [the government's] contention that there are no victims to the offense and no contemplated restitution amount," id. at 4, and speculative, including that uncertainty regarding the sales amounts and quantities warranted a downward variance, id. at 5. The court rejected Kumar's arguments. See Jan. 18, 2023 Sent'g Hrg. Tr., Dkt. No. 111, at 23-27 (rejecting defendant's objection to applying the cross-reference to 2B1.1), 31-32 (rejecting defendant's objection to the PSR's loss calculation).

Concerning the appropriate sentence, Kumar sought a sentence of time served, which was the equivalent of approximately 20 months. Id. at 2; Jan. 18, 2023 Sentencing Hrg. Tr., Dkt. No. 111, at 41. Kumar argued for a variance that would "categorize at least under fairness and equity Kumar as Criminal History Category I," based on what he called "sequential" prosecutions in Rhode Island and Massachusetts for "overlap[ing] conduct," and the need to avoid unwarranted sentencing disparities, citing statistics indicating the prevalence of sentencing variances in this district and citing specific examples of three defendants who received "proportionate" sentences of 3 years, 2 years, and 3.5 years. See Defendant's Sentencing Memo., Dkt. No. 96, at 7-9; Jan. 18, 2023 Sent'g Hrg. Tr., Dkt. No. 111, at 43-44. Defendant's counsel also conceded that, given the court's denial of the defendant's objections

7

discussed above, a single prosecution would not have resulted in a lower Guideline calculation and that the separate prosecutions were not undertaken due to an improper motive on the part of the government. Jan. 18, 2023 Sent'g Hrg. Tr., Dkt. No. 111, at 44.

The government sought a low-end advisory Guideline sentence of 87 months, no fine, and the maximum term of supervised release, arguing that 87 months would also be in the middle the applicable advisory Guideline range if Kumar had been in Criminal History Category I. see Gov't Sentencing Memo., Dkt. 95, at 1; Jan. 18, 2023 Sent'g Hrg. Tr., Dkt. No. 111, at 34-40.

The court imposed a prison sentence of 87 months to be followed by 36 months of supervised release and a fine of $100,000 to be paid on a schedule determined by the court if Kumar remained in the United States. See Judgment, Dkt. No. 102; see also Jan. 18, 2023 Sent'g Hrg. Tr., Dkt. No. 111, at 47-52 (imposing sentence). At the sentencing hearing, the court noted that it had considered imposing a sentence of 72 months until Kumar stated, in open court, that he provided incorrect answers during the final proffer session because he could did not understand the government's questions. Jan. 18, 2023 Sent'g Hrg. Tr., Dkt. No. 111, at 50. The court found this statement contradicted Kumar's guilty plea and indicated to the court that Kumar had not "learned

his lesson." Id. at 50-51 (noting the sentence is intended to send a message).[3]

### C.   The Appeal

Kumar appealed his sentence claiming that this court misapplied the fraud cross-reference contained in U.S.S.G. § 2N2.1, and miscalculated the loss amount. See Aug. 12, 2024 Opinion, Dkt. No. 117, at 7. The Court of Appeals rejected both claims and affirmed Kumar's sentence. Id. at 10, 18, 19.

### D.   The 2255 Motion

In the instant 2255 Motion, Kumar argues that: (1) he received ineffective assistance of counsel in several respects; (2) that he was the subject of vindictive prosecution; and (3) that the government's delay in bringing the charges was prejudicial in violation of the Fifth Amendment. 2255 Motion, Dkt. No. 120, at 2-7. The government opposed the 2255 Motion, requesting that it be denied based on the parties' submissions. See Gov't Opposition to 2255 Motion, Dkt. No. 122. Kumar filed a Reply. See Reply, Dkt. No. 123. He also filed a "Motion to Compel," requesting that the court order the government to provide him copies of "all record citations and referenced materials" in its opposition in order to

---

[3] On February 2, 2023, Kumar filed a letter addressed to the United States Attorney and entitled "Motion to Reduce Sentence. Rule 35(b)." Dkt. No. 108. Federal Rule of Criminal Procedure 35 does not authorize the court to reduce Kumar's sentence in the circumstances of this case. Therefore, the motion is being denied.

provide him meaningful access to the courts. See Motion to Compel, Dkt. No. 124. The government objects to Kumar's Reply. See Gov't Response to Reply and Motion to Compel, Dkt. No. 125. It also responded that his Motion to Compel should be denied as moot because on January 3, 2025, the government mailed Kumar "a binder containing the PACER documents he requested." See id. at 2. Kumar subsequently filed a Supplemental Reply. See Dkt. No. 126.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct his sentence. Relief may be granted, on the grounds that (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence is otherwise "subject to collateral attack." See 28 U.S.C. § 2255(a); see also Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994). In collaterally attacking a conviction, the burden is on the petitioner to show by a preponderance of the evidence entitlement to relief, see David v. United States, 134 F.3d 470, 474 (1st Cir. 1998), including entitlement to an evidentiary hearing, see Cody v. United States, 249 F.3d 47, 54 (1st Cir. 2001); see also Rules 4 and 8 of the Rules Governing Section 2255 Proceedings.

Where a petitioner claims that his counsel was ineffective in violation of the Sixth Amendment to the United States Constitution, he must establish both prongs of the standard set out in Strickland v. Washington, which stated that "judicial scrutiny of counsel's performance must be highly deferential." 466 U.S. 668, 687, 689 (1984). First, the petitioner must show that counsel's performance was deficient. The performance inquiry asks whether counsel's assistance "was reasonable considering all the circumstances" using the "[p]revailing norms of practice" as a guide. Id. at 688. Second, the petitioner must show that the deficient performance prejudiced the defense. Id. at 687. Prejudice will be established where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

"Evidentiary hearings on § 2255 petitions are the exception, not the rule," so there is a "fairly heavy burden" on the petitioner to demonstrate that an evidentiary hearing is warranted. United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) (citations omitted). An evidentiary hearing is not necessary when a § 2255 motion is inadequate on its face, or, although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case. See Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003) (quoting United States v. DiCarlo, 575 F.2d 952, 954 (1st. Cir. 1978)); see also Rule

11

4(b) of the Rules Governing Section 2255 Proceedings ("If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the [court] shall make an order of summary dismissal."). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." McGill, 11 F.3d at 225.

III.    ANALYSIS

The court construes Kumar's pro se filing liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Estelle v. Gamble, 419 F.3d 20, 106 (1976). Even construing his pro se motion liberally, none of Kumar's claims are meritorious.

In essence, Kumar claims that the following events, together, render his conviction and sentence infirm and require that they be vacated. See 2255 Motion, Dkt. No. 120 at 8-21. Kumar claims that, first, his counsel in the District of Rhode Island ineffectively allowed him to proffer extensively with the government without obtaining any agreement regarding the immunity protections for the use of the information he provided. Id. Next, according to Kumar, prosecutors in the District of Massachusetts thereafter vindictively delayed--until Kumar had obtained a sentence

reduction and served his entire sentence for the Rhode Island conviction--before initiating charges in this case even though the government obtained the information underlying this prosecution from Kumar during the extensive Rhode Island proffer sessions. Id.

This resulted, Kumar claims, in a sentence that was a statistical outlier, chiefly because his counsel failed to argue his criminal history category overrepresented the seriousness of his criminal history and likelihood of recidivism. Id. Specifically, Kumar had no criminal history at the time of the 2015-2019 offense at issue in this case, but, he claims, as a result of the government's election to delay prosecution until after he was convicted in Rhode Island, Kumar's criminal history score qualified him for Criminal History Category II, rather than I, based on the inclusion of points from the Rhode Island conviction. Id.

As indicated earlier, Kumar first argues that he received ineffective assistance of counsel because his attorney failed to obtain proffer protection for him in interviews with the government. Id. at 4, 14-15. While Kumar's counsel did obtain a proffer agreement with the authorities in the District of Rhode Island, he did not sign a separate agreement with authorities in the District of Massachusetts. However, even if this failure was ineffective, Kumar has not established the requisite prejudice. Proffer letters typically do not protect a person from prosecution

13

for making false statements as he did in his meeting with federal authorities in Massachusetts. Kumar did not provide the proffer letter to Probation in this case. See PSR at 43. Kumar has also not submitted the Rhode Island proffer letter to this court. Therefore, there is no evidence that the Rhode Island United States Attorney provided Kumar immunity from prosecution for making false statements. Nor has he shown that the Rhode Island letter was binding on the federal prosecutors in other jurisdictions, including Massachusetts. Moreover, even if counsel had obtained an agreement in the District of Massachusetts, there is no evidence that the agreement would have protected against the derivative use of Kumar's statements to further investigate him for criminal wrongdoing as the government points out. See Gov't Opp., Dkt. No. 122, at 3.

Kumar next argues that he received ineffective assistance of counsel because his attorney failed to seek time-served credit under U.S.S.G. §5G1.3(b),[4] argue for a downward departure based on overrepresentation of criminal history, and present sentencing statistics to the court that would support a lower sentence to avoid an unwarranted sentencing disparity. 2255 Motion, Dkt. No. 120, at 4, 15-18.

---

[4] Section 5G1.3(b)(2) was not applicable at the time of Kumar's sentencing in this case because he did not have an undischarged sentence.

Each of Kumar's arguments is contradicted by the record. Kumar's counsel vigorously argued for a reduction to a sentence of time served, including based on the time Kumar already served in connection with the Rhode Island conviction and the fact that, but for the government's election to prosecute Kumar sequentially, first in Rhode Island and then in Massachusetts, Kumar would have been in Criminal History Category I, and based on the need to avoid unwarranted sentencing disparities. See Defendant's Sentencing Memo., Dkt. No. 96, at 7-9; see also Jan. 18, 2023 Sent'g Hrg. Tr., Dkt. No. 111, at 41-45.

> For example, counsel wrote in his sentencing memorandum:
>
> The conduct in the instant case was interrelated with the conduct in the Rhode Island case, occurred contemporaneously with and prior to the conduct forming the basis of the Rhode Island charge, and was known to the government prior to the issuance of an Information there. If it had been charged together with the other Rhode Island charges, his sentencing exposure would be notably different. * * * His criminal history category would be a I, as he had no contacts with the criminal court system prior to the Rhode Island case.

Defendant's Sentencing Memo., Dkt. No. 96, at 7. Counsel subsequently argued that: "[a]n equitable application of the sentencing guidelines would, therefore, account for the prison time Kumar has already served." Id. At the sentencing hearing, counsel also specifically asked the court to "categorize at least under fairness and equity Kumar as a Criminal History Category I."

See Jan. 18, 2023 Sent'g Hrg. Tr., Dkt. No. 111, at 43.[5]

Kumar's counsel also argued that a time-served sentence was necessary to "avoid unwarranted sentencing disparities," citing statistics indicating the prevalence of sentencing variances in this district and citing specific examples of three defendants who received "proportionate" sentences of 3 years, 2 years, and 3.5 years for similar conduct. See Defendant's Sentencing Memo., Dkt. No. 96, at 7-9; Jan. 18, 2023 Sent'g Hrg. Tr., Dkt. No. 111, at 43-44. While counsel may not have cited the statistics to which Kumar now points, counsel ardently argued that the court should sentence Kumar to a lesser term of imprisonment to avoid unwarranted sentencing disparity. Moreover, Kumar's 87-month sentence was the median sentence for defendants in Criminal History Category II who were sentenced primarily under Guideline Section 2B1.1 with a Total Offense Level of 28. See Gov't Opp. Dkt. No. 122 at 10, citing Sentencing Commission statistics at https//jsin.ussc.gov/analytics/sadr.d11?Dashboard. Accordingly, Kumar has not established that his counsel was ineffective.

The government argues that Kumar has waived his second and third claims, which, respectively, allege vindictive prosecution and preindictment delay by pleading guilty and never thereafter

---

[5] The court implicitly rejected these arguments in imposing a sentence within the Guidelines range as calculated by the Final PSR. See Jan. 18, 2023 Sentencing Hrg. Tr., Dkt. No. 111, at 47.

raising these issues. Opposition, Dkt. No. 122, at 11 (correctly citing United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002) and Johnson v. Zerbst, 304 U.S. 458, 464 (1938), among other cases, for the proposition that a party waives a right when he knowingly relinquishes it). For the reasons in the government's Opposition, and the fact that, as discussed below, these claims are not meritorious, they are being denied.

Kumar argues that he was the subject of vindictive prosecution for "exercising his right" to file a Rule 36 motion that resulted in his earlier release on his District of Rhode Island case. 2255 Motion, Dkt. No. 120, at 5, 19. He also alleges that this issue was not previously raised due to the ineffectiveness of his attorney. Id. As noted above, Kumar has not preserved his vindictiveness claim. In any event, to establish vindictiveness, Kumar must prove that the government's charging decision was a "direct and unjustifiable penalty" that resulted "solely from the defendant's exercise of a protected legal right." United States v. Goodwin, 457 U.S. 368, 384, n.19, n.11 (1982). While Kumar's lies to government investigators led to his being investigated and prosecuted, Kumar has not provided any evidence that the government prosecutor harbored any animus toward him much less that, but for such animus, he would not have been prosecuted. Therefore, his vindictive prosecution claim is not meritorious. See United States v. Dwyer, 287 F. Supp. 2d 82, 89 (D. Mass. 2003).

Kumar's sentence in the Rhode Island case appears to have been modified only to correct a clerical error, and not as the result of Kumar's exercise of any constitutional right. That the government filed a criminal complaint earlier than originally planned in order to arrest Kumar before he was removed from the country by Immigration and Customs Enforcement is not evidence of vindictiveness. See Basil Aff., Dkt. No. 122-2, ¶¶ 6, 8. To the extent he raises a Sixth Amendment claim, Kumar has failed to establish that his counsel was ineffective in advising him to plead guilty, or that he was prejudiced in violation of the Sixth Amendment by not pursuing the vindictiveness claim that he waived by pleading guilty.

Kumar's final argument is that the government's delay in bringing the charges prejudiced him in violation of the Fifth Amendment because the delay allowed for the imposition of a higher sentence. See 2255 Motion, Dkt. No. 120, at 7, 20. Kumar also argues that this claim was not raised previously due to ineffective assistance of his attorney. Id. As noted above, Kumar has not preserved a Fifth Amendment claim, but, even assuming it was preserved, Kumar's claim lacks merit.

"Even when an indictment is brought within the statute of limitations, 'excessive pre-indictment delay can sometimes, albeit rarely, violate the Fifth Amendment's Due Process Clause if the defendant shows both that the 'delay caused substantial prejudice

to his right to a fair trial' _and_ that 'the [g]overnment intentionally delayed indictment . . . to gain a tactical advantage.'" United States v. Irizarry-Colon, 848 F.3d 61, 70-71 (1st Cir. 2017) (quoting cases)(emphasis in original).

The First Circuit has required that a defendant "do more than allege that witnesses' memories had faded or that evidence had been lost that might have been helpful to him" to establish prejudice. Id. at 70 (citing United States v. Muñoz-Franco, 487 F.3d 25, 58 (1st Cir. 2007)). The First Circuit has required a showing of "bad faith" to establish intentional delay. Id. (citing United States v. Crooks, 766 F.2d 7, 11 (1st Cir. 1985)).

Kumar has failed to demonstrate that the delay was result of any improper motive or that the delay substantially prejudiced him. Opposition, Dkt. No. 122, at 14-17. Kumar's single proffer session with federal authorities in Massachusetts took place on February 27, 2020, on the eve of the Covid Pandemic. It was after that session that "[t]he government . . . began investigating Kumar for drug crimes, money laundering, and other crimes in Massachusetts." Gov't Opp., Dkt. No. 122, at 3. During the 15 months between when Kumar lied to law enforcement agents in Massachusetts on February 27, 2020 and, May 2021, when he was charged in this case, "the government investigated the scope of the defendant's criminal conduct and sought to identify persons who purchased controlled substances and other illegal prescription

drugs from the defendant and his co-conspirators." Opposition, Dkt. No. 122, at 14; see also Basil Aff., Dkt. No. 122-2, ¶¶ 3. The government also indicates that, as in all cases, the Covid Pandemic slowed the pace of investigation of Kumar. Opposition, Dkt. No. 122, at 14; see also Basil Aff., Dkt. No. 122-2, ¶ 5. Nevertheless, the government states that by June 2020, Kumar knew he faced likely prosecution in Massachusetts, and by September 2020, he knew the U.S. Attorney's Office was continuing to investigate but intended to charge him. Opposition, Dkt. No. 122, at 4.

Pre-indictment delay for the purpose of investigation or discovering all the participants in a conspiracy so they could be tried together is permissible, see Irizarry-Colon, 848 F.3d at 70 (citing United States v. Lovasco, 431 U.S. 783, 790-92, 795-96 (1977)). In contrast, "[d]elay in order to deprive the defendant of witnesses . . . or impose the burden of defending oneself in back-to-back trials . . . may not be." Id. at 71 (citations omitted).

Kumar has failed to demonstrate that the delay was improper. The delay that occurred was for the valid purpose of investigating Kumar's criminal conduct. The information Kumar provided in his last proffer session was the starting point for the government's investigation of him. That investigation thereafter coincided with

the Covid Pandemic, which presented unique investigative challenges for the government in all cases, not just Kumar's.

With regard to prejudice, Kumar focuses on his sentence. However, the conduct at issue in the two federal districts was distinct and this court rejected Kumar's counsel's request to discount the sentence in the Massachusetts case in light of the Rhode Island case. See Jan. 18, 2023 Sent'g Hrg. Tr., Dkt. No. 111, at 47-52. In any event, Kumar's ultimate sentence was within the range that would have applied whether he was in Criminal History Category I or II. Kumar has not established that he was prejudiced by any delay in initiating the prosecution. Kumar's failure to demonstrate prejudice is also fatal to any Sixth Amendment claim. See Strickland, 466 U.S. at 694.

Accordingly, for these reasons and as amplified in the government's submissions, Kumar's claims are being denied.

IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(B), a defendant may not appeal a final order in a § 2255 proceeding unless the district court first issues a Certificate of Appealability ("COA") or the Court of Appeals authorizes it. This court may only issue a COA if a defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A movant "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his

constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003). This standard presents "a low bar." <u>Pinero v. Medeiros</u>, 381 F. Supp. 3d 169, 171 (D. Mass. 2019). Nevertheless, a movant "seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." <u>Miller-El</u>, 537 U.S. at 338 (quotation marks and citation omitted).

In view of the low bar to obtaining a COA and the unusual facts of this case, the court is issuing a COA.

V.     ORDER

In view of the foregoing, it is hereby ORDERED that:

1.     Kumar's 2255 Motion (Dkt. No. 120) is DENIED.

2.     Kumar's Motion to Compel (Dkt. No. 124) is DENIED as MOOT.

3.     Kumar's Motion to Reduce. Rule 35(b) (Dkt. No. 108) is DENIED.

4.     A Certificate of Appealability of the denial of Kumar's 2255 Motion is hereby ISSUED.

_____
UNITED STATES DISTRICT JUDGE